# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**JERMAINE OCTAVIA WINTERS**                                                        **PLAINTIFF**

**VERSUS**                                              **CIVIL ACTION NO. 1:08cv1456-RHW**

**RICKY VENY and DOUGLAS SMITH**                                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Before the Court are [43] and [48] Defendants' motions for qualified immunity and summary judgment filed September 23, 2009. Plaintiff's responses to the motions were due by October 13, 2009, but Plaintiff has neither responded, nor requested any extension of time to do so. Despite Plaintiff's lack of a response, the Court must address the motions on the merits as they are dispositive in nature. Local Rule 7.2(C)(2).

### Procedural History

On December 5, 2008, Jermaine Octavia Winters filed this 42 U.S.C. § 1983 prisoner's civil rights lawsuit, claiming Officers Ricky Veny[1] and Douglas Smith violated his constitutional rights by using excessive force during an incident at the Harrison County Adult Detention Center (HCADC) on November 15, 2008.[2] Winters was confined at the HCADC awaiting trial on charges of armed robbery and kidnaping. At the omnibus/screening hearing which the Court conducted on February 26, 2008, Winters testified he had been indicted, and was scheduled to go

---

[1] The motion pleadings spell this name "Veney." The Court uses the spelling which appears on the docket.

[2] Winters originally also named as defendants Sheriff Melvin T. Brisolara, Warden Donald Cabana, Officer Phil Taylor. By order [20] entered March 2, 2009, the Court dismissed the complaint as to these three defendants based upon Winters' testimony at the screening hearing that he sued them only because they were supervisors in the chain of command over Veny.

1

to court on the charges in April. At the hearing all parties consented to jurisdiction by the U.S. Magistrate Judge [18] pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, and the case was reassigned to the undersigned for all purposes by order [19] entered February 27, 2008.

The Facts

On November 15, 2008, Winters and two other prisoners were assigned to cell 139 in A-Block ,E-Section (maximum security) at the HCADC. Ricky Veny was the Sergeant on duty assigned to A-Block, E-Section, and Douglas Smith was the Corrections Officer on duty. Winters had a family problem – he had received news that his grandfather was sick and in the hospital – and asked Sergeant Veny for permission to make a phone call. [43-4, p. 2] Veny told Winters he would have to speak to the Lieutenant, but that Lt. Leonard was speaking with another inmate at that time. Winters continued to yell and bang on his cell door, and confronted Veny again around 10:30 p.m.,[3] when Veny returned to Winters' cell for the second or third time. [43-4, p. 10] When Veny said he did not have time to talk to Winters, and that Lt. Leonard was still speaking with another inmate, Winters got mad,[4] plugged the toilet in his cell with his towel and began repeatedly flushing the toilet to flood the zone. Winters testified his objective was to get someone of higher authority in the zone to talk to him.

Tower Officer Donald Atwell notified Sgt. Veny when he saw water coming from Winters' cell. [43-5] Veny and Deputy Smith came into the zone and turned off the water to the cell, then the officers went to Winters' cell. Atwell observed what appeared to be a heated

---

[3]Winters indicated the telephone is turned off at 11:00 p.m. [43-4, p. 3] He also testified that if he did not get to use the phone that night, he could do so the next day. [43-4, p. 6]

[4]Although Winters testified in the screening hearing that he was mad, in his deposition he denied being angry. [43-4, pp. 6-7, 10] Regardless of the underlying emotion, it is undisputed that he intentionally stopped up the toilet to flood the zone, and threatened to break the toilet when the water was cut off.

2

discussion between Winters and Veny. [43-5, p. 2] After the officers cut off the water, Winters told them he would just break the motherf***ing toilet. [43-4, pp. 16-17] Winters continued to yell and curse, and kicked at the toilet while the officers were standing outside his cell. [43-4, pp. 12-17] Winters admits his cellmates were becoming agitated and wanted to get away from him because Winters was threatening to tear things up. [43-4, p. 14, 17]

Veny told Winters to stop it, but Winters refused to comply, continuing his cursing and demanding to talk to a lieutenant or captain. Veny had Smith open the cell door. Veny, Smith and Atwell all state Winters became aggressive and moved forward in a threatening manner [43-3, p. 2; 43-6, p. 2; 43-5, p. 2] when the door opened, though Winters denies doing so. Veny shot Winters with his taser, and when the taser prongs hit him, Winters fell, sustaining an abrasion or laceration over his right eye. Veny and Smith pulled Winters out of the cell and into the dayroom, and Veny radioed for the shift lieutenant and medical personnel. The jail nurse came and treated Winters for a laceration over his right eye, and Winters testified he told her he was all right.[5] [43-3, p. 3] Lt. Earl Leonard responded to the call from Veny, and Winters told Lt. Leonard, "I deserved that." [44] Winters does not deny saying this, and concedes that he cannot say what Veny's intentions were when he had the cell door opened and tased him; he cannot say Veny intended to injure him. [43-4, p. 22-23, 31] Winters does not dispute the officers were just doing their jobs. [43-4, p. 20]

Officers transported Winters to the hospital where the taser prongs were removed, and the laceration over his eye was stitched. [43-4, p. 23] According to Winters he sometimes passes out for 30-45 seconds; he gets "light-headed" when he gets mad; and he has vision problems for

---

[5]Winters testified he again told the nurse on November 17, 2008, two days after the incident, that there was nothing wrong with him. [43-4, p. 29].

which he has seen an eye doctor, although the last eye exam he had before this was when he was about ten years old. [43-4, p. 25, 27] Winters admits he has not had to go back to see a doctor regarding these problems. [43-4, p. 27]

As a result of the incident, Winters was issued a rule violation report (RVR) for threatening an officer, causing the toilet to malfunction and assault on an officer. He was found guilty on the RVR. [43-8]

## Summary Judgment Standard

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law.

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). On a motion for summary judgment, the Court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,* 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986). Rule 56(e) provides in part:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading, rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial. <u>If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.</u>

*Fed. R. Civ. P*. 56 (e)(2) (emphasis added). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law." *Fraire v. City of Arlington*, 957 F.2d 1268, 1273 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S. Ct. 462, 121 L. Ed. 2d 371 (1992).

The moving party must show the absence of a genuine issue of material fact by affidavit or other evidentiary materials. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 n.2, 91 L.Ed.2d 265 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986). For the Court to find there are no genuine material factual issues, the Court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict for him. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249-50, 106 S. Ct. at 2510-11 (1986).

If the movant meets his burden by proving the absence of a genuine issue of material fact, then "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994), *citing Celotex*, 477 U. S. at 325, 106 S. Ct. at 2553-54. The nonmovant cannot discharge this burden by referring to the mere allegations or denials of his pleadings, but must, either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record, set out specific facts showing that a genuine issue as to a material fact exists. See *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553; *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991); Fed. R.Civ. P. 56(e). If the nonmovant fails to present evidence showing a genuine issue of material facts exists, "the summary judgment motion must be granted." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

5

Excessive Force

Inmates are protected from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. To establish an Eighth Amendment violation for excessive force, the plaintiff must show that the defendants unnecessarily and wantonly inflicted pain on him. The issue here is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 998 (1992), citing *Whitley v. Albers*, 475 U.S. 312, 320-321, 106 S.Ct. 1078, 1084-1085 (1986). The determination of this issue involves a subjective analysis of the defendants and their state of mind at the time. To act "maliciously" means to intentionally do a wrongful act without just cause or excuse, with an intent to inflict injury or under circumstances that show an evil intent. Factors considered in determining whether jail officers' actions unnecessarily and wantonly inflicted pain on a prisoner include (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury suffered, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the forceful response. *Whitley v. Albers*, 106 S.Ct. at 1085. Applying these factors to the case at bar leads the Court to conclude that Plaintiff has failed to carry his burden of showing a genuine issue of material fact as to whether Veny and Smith violated his constitutional rights.

Plaintiff's behavior clearly presented a situation requiring prompt and decisive action to restore order and discipline in the zone. It is undisputed that the officers repeatedly went to Plaintiff's cell the night of the incident to talk to Plaintiff, who was yelling, kicking the cell door and demanding to speak to the Lieutenant. Winters even told one of his cellmates, "I'm fixing to

6

move." [43-4, p. 9]  It is also undisputed that Plaintiff intentionally flooded not only his cell but other areas, that he threatened to break the toilet and acted toward that end when the officers cut off the water supply to the cell, and that his actions awakened and agitated his own cellmates who were clamoring to get away from him.  Winters was admittedly not interested in talking to Veny any more, and admits he engaged in a yelling and cursing match which, according to his omnibus testimony, he (Winters) was "steady leading ... on."  Although Winters denies making any threatening movement when Veny had the cell door opened, he admits he threw his arms out and moved toward the toilet, just before Veny shot him with the taser.  Both the Defendants and Tower Officer Atwell perceived Winters' movements as aggressive and threatening.  Plaintiff's own testimony shows that talking was not going to resolve the situation.  The officers' attempts to talk to him were to no avail, and Plaintiff ignored their commands to stop his disruptive behavior.  Under the circumstances force was needed, Veny used only a brief burst from the taser, and Winters' injuries, sustained when he fell, were minor.  The evidence before the Court shows not malicious intent in the use of force, but a good faith effort to restore discipline and protect the safety of both the officers and other inmates in the vicinity, and the force used was reasonable under the established facts. Officer Smith used no force against Plaintiff, but merely opened the cell door at Veny's instruction.  Plaintiff assumes Smith knew Veny was going to use the taser when he opened the cell door, and contends Smith "aided and assisted Veny in doing wrong." [43-4, p. 32]  This is an insufficient foundation for imposition of liability for violation of Plaintiff's constitutional rights.  Plaintiff had not had a problem with Veny before this incident, no evidence indicates Veny posed a risk of harm to Plaintiff, thus Smith cannot be held to have knowledge that Veny posed such a risk to Plaintiff.  The incident at issue escalated

7

quickly, and there is no evidence indicating that Smith had any realistic opportunity to prevent Veny's use of the taser. The Court is of the opinion that Plaintiff has failed to show a constitutional violation on his claim of excessive force against either of the Defendants.

## Qualified Immunity

Law enforcement officers are entitled to assert the defense of qualified immunity for all acts and omissions which occur in the course of their official duties. *Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986). While the Court is of the opinion that Plaintiff has failed to show the officers used excessive force, even if the evidence were sufficient to establish a constitutional violation, the Court would find the officers entitled to qualified immunity, because their conduct in this case was objectively reasonable under clearly established law. The evidence shows that Officers Veny and Smith were faced with a disruptive and destructive inmate who had already flooded the zone, threatened and acted to destroy the toilet, and agitated his cellmates to the point that they wanted to get away from him. The officers acted reasonably and in good faith as they first attempted to talk to Winters and get him to stop his destructive behavior, and ultimately used force to quell the disturbance he was causing. In light of the circumstances with which Veny and Smith were confronted and clearly established law, if reasonable officers could disagree as to whether Veny and Smith's actions violated Winters' constitutional rights, then immunity applies. *Whiting v. Tunica County*, 222 F.Supp. 809, 818 (N.D. Miss. 2002). The affidavit of Tower Officer Atwell, who witnessed the incident which gave rise to this lawsuit, unequivocally states that at no time did any officer use more force "than was absolutely necessary to regain order and control of the situation with Inmate Winters." [43-5, p. 3] Winters has presented nothing to negate the qualified immunity defense asserted by the Defendants. See,

*Salas v. Carpenter*, 980 F.2d 299, 304 (5th Cir. 1992). The Court finds that even if the actions of Veny and Smith were deemed a constitutional violation, the Officers would be entitled to qualified immunity in this case. It is therefore,

**ORDERED AND ADJUDGED**, that the Defendants' motions for summary judgment and qualified immunity are granted, and judgment shall be entered in favor of both Defendants.

SO ORDERED, this the 2nd day of November, 2009.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE